AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Virginia

FEB 2 2 2018

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>**Information Associated with Emails Accounts<br>At Google, Inc.** | )<br>)<br>)<br>)<br>)<br>) |

Case No.  1:18sw 110

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
information associated with email addresses seanandrewduncan@gmail.com; duncansean@gmail.com; prophetic kaiser@gmail.com; baahith217@gmail.com; tariqulihsaan@gmail.com; &benglawife@gmail.com at Google, Inc.

located in the _____Northern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized):*
Evidence of a crime contained in records associated with the electronic mail accounts listed above, as further described in Attachment A.  This warrant is sought also pursuant to 18 U.S.C. § 2703(c)(1)(A).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C.  § 2339B | attempting to provide material support to terrorists |
| 18 U.S.C.  § 2252 | possession of child pornography |

The application is based on these facts:
See Attached Affidavit

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Nicholas Caslen, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   _____02/22/2018_____

_____/s/_____
Michael S. Nachmanoff
United States Magistrate Judge
*Judge's signature*

City and state:  Alexandria, VA

Michael S. Nachmanoff, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

F I L E D

FEB 2 2 2018

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE MATTER OF THE SEARCH OF )
INFORMATION TO BE PROVIDED )  No. 1:18sw 110
BY GOOGLE, INC. )

AFFIDAVIT

I, Nicholas Caslen, after being duly sworn, depose and state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), assigned to the

Washington Field Office, Joint Terrorism Task Force ("JTTF"). I have been an FBI Special

Agent since 2011, and worked on the JTTF in both Wichita, Kansas, and Washington, D.C. As

part of my duties, I investigate potential criminal and terrorism-related activities associated with

suspected Homegrown Violent Extremists. I have participated in numerous counterterrorism

investigations, during the course of which I have conducted physical surveillance, executed court

authorized search warrants, and used other investigative techniques to secure relevant

information regarding various crimes

2. This affidavit is submitted in support of a warrant to require the disclosure to the

government of all information associated with the Google accounts associated with emails:

**seanandrewduncan@gmail.com; duncansean@gmail.com; prophetickaiser@gmail.com;**

**baahith217@gmail.com; tariqulihsaan@gmail.com;** and **benglawife@gmail.com;** stored at

premises owned, maintained, controlled, or operated by email service provider Google, Inc. at

1600 Amphitheatre Parkway, Mountain View, California. Based on the facts contained in this

affidavit, there is probable cause to believe that within the information associated with these

accounts (collectively, "the SUBJECT ACCOUNTS") are records, documents, communications,

messages, and other information, more particularly described in Attachment A (and incorporated here), related to the attempt to provide material support to a designated terrorist organization, in violation of 18 U.S.C. § 2339B, and/or the possession of child pornography, in violation of 18 U.S.C. § 2252.

3. I have personally participated in this investigation and have witnessed many of the facts and circumstances described herein. I have also received information from other law enforcement and intelligence officials related to this investigation. The statements contained in this affidavit are based on my own observations, review of documents, recordings, and reliable information provided to me by other law enforcement officials. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. When in this affidavit I refer to something occurring on a specific date, I intend to convey that the event occurred on or about that date.

<u>Probable Cause</u>

4. On or about October 15, 2004, the United States Secretary of State designated al-Qaeda in Iraq ("AQI"), then known as Jam 'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224. On or about May 15, 2014, the Secretary of State amended the designation of AQI as a FTO under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224 to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name. The Secretary also added the following aliases to the FTO listing: The Islamic State of Iraq and al-Sham ("ISIS"—which is how the FTO will be referenced herein), the Islamic State of Iraq and Syria, ad-Dawla al-Islamiyya fi al-Iraq wa-sh-

2

Sham, Daesh, Dawla al Islamiya, and Al-Furquan Establishment for Media Production. On

September 21, 2015, the Secretary added the following aliases to the FTO listing: Islamic State,

ISIL, and ISIS. To date, ISIS remains a designated FTO.

I.    Duncan Possessed Evidence on Memory Chips and Thumb Drives

5. In February 2016, the FBI received information regarding Sean Andrew Duncan,

(hereinafter "Duncan"), a United States citizen, who moved to Sterling, Virginia in June 2017,

from Pittsburgh, Pennsylvania. One of Duncan's relatives reported that Duncan had converted to

Islam, may have been radicalized, and voiced his approval of westerners being beheaded in the

Middle East. Duncan's relative reported that Duncan and his wife planned to travel to Turkey.

6. On December 6, 2017, the FBI conducted a search of Twitter and found an account

associated with the phone number 443-813-7730 ("the 7730 Phone Number"). According to an

open source review of Twitter, the account was created in November 2015 and has the Twitter

handle @DawlahtulIslaam. The phrase "Dawlahtul Isla[a]m" is an Arabic phrase that roughly

translates to "The Islamic State." I believe that this Twitter account was controlled by Duncan,

because in November 2015, Duncan listed the 7730 Phone Number in his application for a U.S.

passport.

A.    Travel to Turkey

7. According to U.S. Customs and Border Protection, Duncan and his wife booked a

flight to Istanbul, Turkey, departing from Washington Dulles International Airport, on February

26, 2016. The reservations reflected that Duncan and his wife were scheduled to depart Turkey

for Bangladesh on March 4, 2016, and return to the United States on March 20, 2016. In fact, on

February 26, 2016, Duncan and his wife departed the United States for Turkey. On February 27,

2016, they were denied entry into Turkey, and returned to the United States. Upon their return,

they were interviewed by the FBI.

8. According to telephone service provider records, on March 4, 2016, Duncan changed

his cell phone number from the 7730 Phone Number to a number ending in 9440 ("the 9440

Phone Number").

B.    Duncan's Contact with a Foreign Detained Citizen

9. On July 25, 2017, during an interview with FBI agents, an unnamed co-conspirator

(hereinafter "UCC"), who was in the custody of a foreign government for actively planning to

travel to join ISIS, provided information regarding Duncan. According to UCC, Duncan was one

of her U.S.-based contacts who had expressed an interest in joining ISIS, expressed an interest in

conducting an attack in his homeland (the United States), and provided her instructions on how

to construct homemade bombs. Duncan and UCC primarily spoke on encrypted mobile

messaging applications. UCC also confirmed that she communicated with Duncan on an

encrypted  mobile messaging account ("MM1").

10. UCC told FBI agents she first became acquainted with Duncan on social media in

January 2015 when Duncan sent her a friend request. UCC and Duncan initially communicated

through social media but subsequently exchanged phone numbers and communicated on

encrypted mobile messaging applications.

11. According to UCC, Duncan shared news articles with her from an ISIS news outlet

known as Amaq News. During their communications in early 2015, Duncan expressed

agreement with ISIS spokesman Abu Mohammad Al-Adnani's statement that Muslims should be

striking their own homelands. UCC recalled that when she asked Duncan directly if he supported

ISIS, he replied that he did. In addition, UCC made it clear to Duncan from the start of their

relationship in the beginning of 2015 that she would not communicate with him unless he was "pro-ISIS." UCC was looking for a "Salafi or an ISIS supporter" to marry and live with in Syria. She believed she would reap "heavenly rewards" if she married an ISIS fighter who died in battle.

12.  In February 2015, UCC asked Duncan if he intended to go to Syria. Duncan told UCC that he wanted to make "hijrah" to Syria and that he wanted UCC to go with him to Syria. In order for Duncan and UCC to go to Syria together, Duncan proposed marriage to UCC. Duncan's proposal occurred over an encrypted mobile messaging application. Duncan told UCC that after they were married, he wanted to plan their trip to Syria. Duncan wanted to come to UCC's country to propose to UCC in person, but she said it was too soon. As a result of UCC rejecting Duncan's offer of marriage, the two broke contact in or around March 2015.

13.  UCC recalled a time before they broke contact when she was upset at work due to non-Muslim women wearing shorts that exposed their bodies. UCC told Duncan via an encrypted mobile messaging application she was upset with the way these women dressed and she wanted to do something about it. Duncan replied with a link to a website, and a message saying she could "try this." UCC stated that the link contained pictures and instructions on how to make weapons and bombs. UCC stated the link was to an article titled, "How to build a bomb in the kitchen of your Mom" from Inspire magazine.

14.  In January 2016 (a month before Duncan and his wife's trip to Turkey), Duncan asked UCC if she still wanted to go to Syria and to be his second wife. UCC asked Duncan if his current wife would be okay with UCC coming with them to Syria. Duncan stated that his wife would have to be okay with it. UCC did not agree to go, and the two broke contact again.

15.  In December 2016, Duncan, utilizing an encrypted mobile messaging account, re-initiated contact with UCC.  Duncan told UCC that he had come back from Turkey, from where he and his wife had been sent back to the United States.  Duncan said he thought the FBI was monitoring him, but would not elaborate on why he was deported or why the FBI was monitoring him.  Duncan said he did not want to implicate himself and that his wife could keep secrets.  Duncan stated that his wife knew what to say when questioned by authorities.  In July 2017, the FBI reviewed the UCC's phones and confirmed there were communications between Duncan and UCC on encrypted mobile messaging applications.

C.   UCE's Interaction with Duncan

16.  On August 2, 2017, the FBI identified an encrypted mobile messaging account ("MM2") with a naming convention similar to the one used by UCC to communicate with Duncan ("MM1").  A review of the profile photographs for this second encrypted mobile messaging account showed a photograph of Duncan and his father.  In addition, the FBI found that MM2 was associated in the encrypted messaging application with the 9440 Phone Number.

17.  On August 11, 2017, an FBI undercover employee (UCE) posing as UCC, contacted Duncan, who was using MM2.  UCE told Duncan that "she" had been arrested by foreign authorities.  Immediately after being told this, Duncan created secure chats and self-destruct timers to destroy the content of his messages with UCE.  UCE told Duncan that "she" intended to make "hijrah."  Duncan stated, "Hm, you know a fence Someone to take you, and is it safe in Iraq."  Later, UCE asked Duncan if he had a contact in Syria, to which Duncan responded, "No a couple have been marytred (sic)."

18.  On August 20, 2017, UCE told Duncan that "she" was in contact with an individual in Libya who was attempting to facilitate "her" travel to Libya.  UCE told Duncan that the

Libyan contact was asking various vetting questions prior to assisting UCE. UCE told Duncan

that "her" Libyan contact was asking strange questions, such as UCE's blood type and family

contact. UCE then asked Duncan if he (Duncan) and his wife were asked similar questions when

they tried to travel to Syria. Duncan stated, "they won't ask that." Duncan further stated, "I didnt

(sic) go for that Just honeymoon."

19. However, later in the conversation, UCE asked Duncan what to do about "her"

contact in Libya. Duncan recommended that UCE ". . . lie to him." Duncan stated he had never

dealt with unnecessary vetting by "contacts" and that he had "always had referrals." Based on

my training and experience, I know that ISIS uses a referral system to recruit new members, and I

interpret Duncan's statement to mean that Duncan did not get asked questions by his contacts

because he had "referrals" who could give them "tazkiyah." Tazkiyah is a recommendation from

a Jihadi Shaykh from their homeland or a Mujahid already in the land of Jihad. It is a generally

given by an existing member of ISIS to show an individual is trustworthy.

D.    Evidence from a Detained ISIS Supporter

20. In October 2017, a foreign government (not the one in whose custody UCC was)

arrested one of its nationals ("Recruiter 1") for inciting rebellion. Recruiter 1 is an ISIS recruiter

who is suspected of drawing foreign fighters from around the world to Recruiter 1's home

country using social media. Recruiter 1 was married to two jihadis with connections to ISIS, one

of whom is dead and the other of whom was arrested for extremism by his home country.

Recruiter 1 posted a message on an electronic messaging application soliciting local and foreign

Muslims to help terrorists fight government troops in Recruiter 1's home country.

21. On December 4, 2017, during an interview with FBI agents, Recruiter 1 said she had

begun recording the names and telephone numbers of individuals who had requested to join her

7

Telegram, Facebook, or other social media and/or communication application groups.  Recruiter 1's notes included a handwritten name appearing to be "Sean Ibn Gary Duncan," associated with the 7730 Phone Number and the associated username MM1.

    E. Duncan's Phone History Research to Conduct Attacks

  22.  On June 29, 2017, the Allegheny County Police Department ("ACPD") provided a partial copy of Duncan's phone to the FBI. On October 6, 2017, ACPD provided the remainder of the copy to the FBI. ACPD had obtained this copy during an investigation surrounding the recent death of Duncan's infant child (the cause of death in the autopsy was inconclusive). Duncan consented in writing to ACPD's search of his phone.  The FBI's review of Duncan's imaged phone revealed hundreds of internet searches between March 2017, and June 2017, for ISIS-related materials; weapons; terrorists; body armor; surveillance; defense tactics; watchlist statuses leaked, watchlist terms, watchlist explanations. Based on my training and experience, I know the above-described searches are consistent with research into how to conduct an attack and defend oneself.

    II. The Search of Duncan's Residence and Obstruction of Justice

  23.  On December 19, 2017, United States Magistrate Judge Theresa Carroll Buchanan authorized searches of Duncan's 2013 Honda CRV automobile, as well as his residence on Courtyard Square, in Sterling, Virginia, for evidence of attempts to provide material support to ISIS, in violation of 18 U.S.C. § 2339B, as well as false statements, in violation of 18 U.S.C. § 1001.  Among the items authorized for seizure in the search were files or information (including files or information on computers or phones) involving travel or attempts to travel overseas; communications with members of foreign terrorist groups, and/or foreign or U.S.-based radicalizers or facilitators, or co-conspirators; contact lists of individuals associated with foreign

terrorist groups, and/or foreign or U.S.-based radicalizers or facilitators; records of internet activity, or other information identifying support for or research related to a foreign terrorist group; and information, programs, tools or applications that may be used for overt or clandestine/covert communications, and any associated contacts or communications history.

24. On December 29, 2017, FBI agents executed the search warrants at Duncan's residence and automobile. Upon execution of the warrant at the residence, the agents knocked on the door, identified themselves as FBI, and announced that they were there to execute a search warrant. Receiving no response, the agents knocked and announced their presence again, but received no response again. The agents then forcibly opened the door, and again identified themselves as FBI, and that they were there to execute a search warrant. The agents at the front door did not see anyone.

25. Moments before the FBI agents entered the residence through the front door, Duncan ran out the back door, barefoot, and with something clenched in his fist. FBI agents guarding the back door yelled at Duncan to stop. Before stopping, Duncan threw a plastic baggie over the heads of the agents.

26. FBI agents recovered the baggie thrown by Duncan. The baggie was a clear plastic Ziploc bag, containing a memory chip stored within a thumb drive that had been snapped into pieces, and placed in a liquid substance that produced frothy white bubbles. Upon searching Duncan, agents recovered a broken casing for a thumb drive from Duncan's pants pocket.

27. Based on my training and experience, I know that thumb drives can be plugged into computers and used to store large gigabyte amounts of electronic information, to include images and documents. Based on my training and experience, I know that criminals, including terrorists

and individuals involved in other crimes such as child pornography, often use thumb drives to store evidence of their criminal activity that they do not want found on their computers.

28.  In light of the circumstances, I believe that Duncan fled from the house with the baggie and the memory chip and the broken thumb drive in order to conceal those items from the FBI agents that Duncan knew were about to search his house.  Further, I believe that the thumb drive was snapped in pieces because Duncan altered, destroyed, and mutilated it in order to impede and obstruct the FBI's investigation of him.  Similarly, based on the circumstances, I believe that the memory chip and broken thumb drive was contained in a baggie containing a liquid substance because Duncan altered, destroyed, and mutilated it in order to impede and obstruct the FBI's investigation of him.

III.    Child Pornography

29.  On December 29, 2017, and again on January 1, 2018, while reviewing one of the electronic devices obtained as a result of the search warrant referenced in the complaint for evidence pertaining to violations of Title 18, United States Code, Sections 1001 and 2339B, an FBI Agent  observed images of what appeared to be child pornography contained within the device.  Based on my training, experience, and the facts set forth below, the FBI believes that the images constitute violations of Title 18, United States Code, Sections 2252 and 2252A.

30.  One item seized was a Samsung Galaxy Note 3 smartphone ("the Samsung").  On December 29, 2017, and again on January 1, 2018, while reviewing the Samsung, an FBI Agent observed images of pre-pubescent minors that appeared to be engaged in sexually explicit conduct with adult males. The images appeared to be child pornography.  An FBI Agent observed other images of pre-pubescent minors posed to expose their genitalia in a sexual manner, which also appeared to be child pornography.  Several of the images appeared to be

screen shots of viewed websites. The pre-pubescent minors in the photos were as young as infants, and the total number of images was in the hundreds.

31.  The Samsung smartphone containing the images of suspected child pornography was, in the past, registered to the 7730 Phone Number that belonged to Duncan.

32.  On January 4, 2018, United States Magistrate Judge Theresa Carroll Buchanan authorized searches of electronic devices and materials seized from Duncan's residence and automobile on December 29, 2017, for evidence of the possession of child pornography, in violation of 18 U.S.C. § 2252 and 2252A.

33.  After further review of two of the electronic devices obtained as a result of the search warrant referenced in the complaint for evidence pertaining to violations of Title 18, United States Code, Sections 1001  and 2339B, an FBI agent observed images of what appeared to be bloodied, deceased children located in a conflict zone similar to Syria or Iraq.  There were also hundreds of images of beheadings of adult men, ISIS fighters and propaganda videos promoting ISIS extremism.

IV.   Electronic Communication Accounts Identified

34.  In addition to seizing the Samsung smartphone mentioned above, the FBI also seized an iPhone from Duncan's residence on December 29, 2017.

35.  A review of the iPhone revealed that it contained a MSISDN number ending in 9440, which matched Duncan's previous known phone number ending in 9440. Further review of the iPhone revealed an SMS message on January 10, 2017, between the user and other individual, during which the user of the iPhone identified themselves stating, "...this is Sean."

36.  As mentioned earlier, during the course of the investigation into Duncan, the FBI learned Duncan used social media platforms and mobile messaging applications to communicate

11

with ISIS sympathizers overseas. Duncan was in contact with at least two individuals supportive of ISIS, both whom have been arrested by national security law enforcement agencies in their home countries.

37.     Based on Duncan's use of social media and mobile messaging applications to communicate with at least two known ISIS related individuals, I believe Duncan utilized his social media, emails, and mobile messaging to engage with other ISIS members and/or prospective members. I believe that Duncan may have used those electronic accounts to express his desire to join ISIS, to communicate with ISIS recruiters, and to send bomb-making information to others.

38.     In addition, because child pornography was already found on electronic media belonging to Duncan, and because perpetrators of crimes involving child pornography often possess child pornography on multiple electronic devices, I submit there is probable cause to believe that Duncan collected digital images of child pornography using various electronic accounts, and stored those images on various cloud storage accounts such as those described below.

39.     Furthermore, based on my training, experience, and discussions with other agents, I know that individuals involved in criminal activity such as terrorism and possession of child pornography, utilize email providers such as Google and Yahoo, as well as social media platforms to include Facebook, Instagram, Twitter, and Snapchat to communicate with other individuals involved in similar criminal activity. I also know that social media platforms such as Tumblr have features that allow users to connect with other users, chat with other users, and share content on a user's page, which can be used to further criminal activity related to terrorism and possession of child pornography. In addition, I know based on my training and experience

12

that email providers such as Google offer services to individuals who use their products such as cloud storage for computer files, calendars, chat features, and even social media pages. I know that individuals involved in criminal activity, such as terrorism and possession of child pornography, tend to store files such as photographs in the cloud storage provided to them by companies such as Google. I further know that internet websites such as, Apple accounts, Dropbox and Evernote provide users similar types of cloud storage. Therefore, based on my training, experience, and discussions with other agents, I know that individuals who Dropbox and Evernote could use the features provided to further criminal activity related to terrorism and possession of child pornography. For these reasons, and those detailed above, I submit that there is probable cause to believe that evidence of Duncan's attempt to support terrorism and possession of child pornography will be located in the following electronic facilities, belonging to Duncan.

A.  *seanandrewduncan@gmail.com*

40.  During a review of the Samsung smartphone seized at Duncan's residence on December 29, 2017, an FBI agent who reviewed the device observed the email address seanandrewduncan@gmail.com as being associated with the device. According to records provided by Google, seanandrewduncan@gmail.com is registered to Duncan's known phone number ending in 9440.

41.  On or about December 21, 2017, Google provided records indicating the Google Account ID number associated with seanandrewduncan@gmail.com is 1083742934539, and the account subscribes to following services by Google: Gmail, Google Calendar, Google Docs, Google Drive, Google Hangouts, Location History, Web History and YouTube.

42.     On January 10, 2018, I attempted to register an email with Google in the name of
seanandrewduncan@gmail.com. However, the registration failed. According to Google, the name
is already taken.  Based on my training and experience, I know that Google accounts only come
back as "already taken" if the account is still active. Therefore, I believe that email
seanandrewduncan@gmail.com is currently active and registered to Duncan.

**B.     *duncansean@gmail.com***

43.     On or about August 8, 2017, U-Haul provided records related to a storage unit
rental at a location in the Northern Virginia Area. According to the records provided, a unit was
rented by a "Suncan (sic) Sean", with an address on Oldham St, in Baltimore, Maryland.  I know
this address to be associated with Duncan's father, Gary Duncan. The known phone number of
Zakiya Sadeq, Duncan's wife, was listed on the rental application, along with the email address
duncansean@gmail.com. Zakiya Sadeq was listed as an additional user of the unit, with an
address on Bright Pond Lane, in Reston, Virginia.  I know this to be the address where Duncan
and Sadeq lived upon their move to the Northern Virginia area in the summer of 2017.

44.     On January 10, 2018, I attempted to register an email with Google in the name of
duncansean@gmail.com. However, the registration failed. According to Google, the name is
already taken.  Therefore, I believe that email duncansean@gmail.com is currently active and
registered to Duncan.

**C.     *prophetickaiser@gmail.com***

46.     During the forensic review of the Samsung seized at Duncan's residence on
December 29, 2017, the email prophetickaiser@gmail.com was observed as being associated
with the device. This email has a similar naming convention to various social media accounts
registered on the phone. The password for email prophetickaiser@gmail.com was contained in

14

the Notes section of the Samsung. FBI Agents did not attempt to use the password to access the account, therefore are unsure if the password is current.

47.     In addition to the review of the Samsung, records received from Google on or about June 30, 2016, show that email address prophetickaiser@gmail.com was listed as a recovery address for email seanandrewduncan@gmail.com.

48.     Furthermore, according to records obtained by U-Haul Moving and Storage, Duncan rented a truck from a U-Haul location in Northern Virginia on or about July 26, 2017, and provided the email prophetickaiser@gmail.com, his Virginia Driver's license number, and his known phone number ending in 9440.

49.     On January 10, 2018, I attempted to register an email with Google in the name of prophetickaiser@gmail.com. However, the registration failed. According to Google, the name is already taken. Therefore, I believe that email prophetickaiser@gmail.com is currently active and registered to Duncan.

    D.     *baahith217@gmail.com*

50.     During the same review of the Samsung, the email address baahith217@gmail.com was observed as being associated with the device. The password for email baahith217@gmail.com was contained in the Notes section of the Samsung. FBI Agents did not attempt to use the password to access the account, therefore are unsure if the password is current.

51.     On or about August 8, 2017, Google provided records related to email baahith217@gmail.com, registered to "Sean Duncan". According to the records provided, seanandrewduncan@gmail.com is listed as a recovery email for baahith217@gmail.com.

Furthermore, the email address baahith217@gmail.com has a similar naming convention to the MM1 and MM2 accounts that Duncan used to communicate with extremists.

52.     According to the records provided by Google, the email baahith217@gmail.com is associated with Google Account ID 690318279361, and subscribes to the following products provided by Google: Gmail, Google Calendar, Google Hangouts, Location History, Web & App Activity, YouTube.

53.     On January 10, 2018, I attempted to register an email with Google in the name of baahith217@gmail.com. However, the registration failed. According to Google, the name is already taken.  Therefore, I believe that email baahith217@gmail.com is currently active and registered to Duncan.

      E.     ***tariqulihsaan@gmail.com***

51.     During the same review of the aforementioned Samsung smartphone, the email tariqulihsaan@gmail.com was observed as being associated with the device.

52.     On or about December 6, 2016, Google provided records related to email account tariqulihsaan@gmail.com. According to the records, the email is associated with Duncan's known phone number ending in 9440, and lists a recovery email of seanandrewduncan@gmail.com. According to the records provided by Google, the email tariqulihsaan@gmail.com is associated with Google Account ID 789652590177, and subscribes to the following products provided by Google: Gmail, Google Calendar, Google Drive, Google Hangouts, Web & App Activity, and YouTube.

53.     On January 10, 2018, I attempted to register an email with Google in the name of tariqulihsaan@gmail.com. However, the registration failed. According to Google, the name is

already taken.  Therefore, I believe that email tariqulihsaan@gmail.com is currently active and registered to Duncan.

F.    ***benglawife@gmail.com***

54.    A review of the iPhone seized from Duncan's residence revealed a Note on the phone showing what appears to be the password for the email address benglawife@gmail.com. FBI Agents did not attempt to use the password to access the account, therefore are unsure if the password is current.

55.    On or about August 8, 2017, Google provided records related to email account benglawife@gmail.com. According to the records, the email is associated with Duncan's known phone number ending in 9440. The account subscribes to the following products provided by Google: Gmail, Google Hangouts, Web & App Activity, YouTube.

56.    On January 10, 2018, I attempted to register an email with Google in the name of benglawife@gmail.com. However, the registration failed. According to Google, the name is already taken.  Therefore, I believe that email benglawife@gmail.com is currently active and registered to Duncan.

57.    Based on my training and experience, I know the following about Google, Inc.:

a. Google, Inc. is the internet service provider for email accounts using the suffix "gmail.com." Google, Inc. requests subscribers to provide basic information, such as name, gender, zip code and other personal/ biographical information, but does not verify the information provided.  Google, Inc. is located at 1600 Amphitheatre Parkway, Mountain View, California.

b. Google, Inc. maintains electronic records pertaining to the individuals and companies for which it maintains subscriber accounts.  These records include opened and unopened e-mail, account access information, e-mail transaction information, and account application information;

c. Subscribers of Google, Inc. may access their accounts on servers maintained and/or owned by their service provider from any computer connected to the

17

Internet located anywhere in the world;

d.      Stored electronic communications, including opened and unopened e-mail for their subscribers may be located on computers of Google, Inc. Any e-mail that is sent to a subscriber of that company is stored in the subscriber's "mail box" on the company's servers until the subscriber deletes the e-mail or the subscriber's mailbox exceeds the storage limits preset by the internet service provider. If the message is not deleted by the subscriber, the account is below the maximum limit, and the subscriber accesses the account periodically, that message can remain on the servers of the internet service provider indefinitely;

e.      When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to a server of the internet service provider, and then transmitted to its end destination. Users have the option of saving a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail from the server, the e-mail can remain on the system indefinitely. The sender can delete the stored e-mail message thereby eliminating it from the e-mail box maintained at their service provider, but that message will remain in the recipient's e-mail box unless the recipient deletes it as well or unless the recipient's account is subject to account size limitations;

f.      A subscriber of services from Google, Inc., can store files, including e-mails and image files, on servers maintained and/or owned by their internet service provider; and

g.      A subscriber of Google, Inc. may store e-mails and/or other files on a server of their internet service provider for which there is insufficient storage space in the subscriber's computer and/or which he does not wish to maintain in the computer in his residence. As a result, a search of the files in the computer in the subscriber's residence will not necessarily uncover the files that the subscriber has stored on the server of their internet service provider.

58.      Therefore, the computers of Google, Inc. are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

59.      I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require Google, Inc. to disclose to the government copies of the records and other information

(including the content of communications) particularly described in Attachment A. Upon receipt of the information described in Section A of Attachment A, government-authorized persons will review that information to locate the items described in Section B of Attachment A.

60.      I am trained and experienced in identifying communications relevant to the crimes under investigation, but personnel of Google are not. I also know that the manner in which the data is preserved and analyzed may be critical to the successful prosecution of any case based upon this evidence. Computer Forensic Examiners are trained to handle digital evidence, but employees of Google are not. It would be inappropriate and impractical, however, for federal agents to search the vast computer networks of Google for the relevant account and then to analyze the contents of that account on the premises of that corporation. Further, the impact on the business of that corporation would be severe.

61.      Accordingly, executing a warrant to search an account at Google requires an approach similar to the standard approach for executing a warrant to search papers stored in a file cabinet. Searching the subject accounts in this case for evidence of the target crimes will require that agents cursorily inspect all information produced by Google in order to ascertain which contain evidence of that crime, just as it necessary for agents executing a warrant to search a filing cabinet to conduct a preliminary inspection of its entire contents in order to determine the documents which fall within the scope of the warrant. In addition, keyword searches alone are inadequate to identify all of the information subject to seizure, because keywords search text, but many common electronic mail, database and spreadsheet applications files (which files may have been attached to electronic mail) do not store data as searchable text.

62.     In order to facilitate seizure by law enforcement of the records and information sought through this affidavit and application with a minimum of interference with the business activities of Google; to protect the rights of the subject of the investigation; and to effectively pursue this investigation, this application seeks the issuance of a warrant that would permit employees of Google to assist agents in the execution of this warrant, in accordance with the procedures described in Attachment A warrant, which is hereby incorporated into this affidavit.

63.     I am advised that, pursuant to 18 U.S.C. § 2703(a), a Court with jurisdiction over the offense that is under investigation has authority to issue a warrant to compel disclosure of stored content and records and other information pertaining to a customer or subscriber of an electronic communication service including a provider located physically in another judicial district.  Accordingly, this Court has the authority to issue warrants to Google for stored content and records and other information pertaining to its subscribers even though that business is located in California.

## Conclusion

64.     Based on the information set forth above, there is probable cause to believe that information stored on Google's servers associated with the SUBJECT ACCOUNTS will contain evidence of attempting to provide material support to terrorists, and/or possessing child pornography, in violation of 18 U.S.C. §§ 2339B and 2252, as more fully described in Attachment A.

Wherefore, I request the issuance of a search warrant pursuant to Rule 41 of the Federal

Rules of Criminal Procedure.

FURTHER THIS AFFIANT SAYS NOT.

Nicholas Qaslen
Special Agent, FBI

Subscribed to and sworn before me on this 22nd day of February 2018.

/s/
Michael S. Nachmanoff
United States Magistrate Judge
Michael S. Nachmanoff
United States Magistrate Judge

21

## ATTACHMENT A (Google, Inc.)

A. The search warrant will be presented to Google, Inc. personnel who will be directed to isolate the accounts for the electronic mail **addresses tariqulihsaan@gmail.com, prophetickaiser@gmail.com, baahith217@gmail.com, seanandrewduncan@gmail.com; benglawife@gmail.com** and **duncansean@gmail.com**. Google, Inc. employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the accounts for the electronic mail addresses specified above, including an exact duplicate of all information stored in the computer accounts and files described therein.

1. All available account contents and all existing printouts from inception of account to present, including e-mails, attachments thereto, drafts, contact lists, address books, and search history, stored and presently contained in, or on behalf of, the electronic mail addresses and/or individual accounts specified above;

2. All electronic files stored online via Google Drive, stored and presently contained in, or on behalf of the account described above.

3. All transactional information of all activity of the electronic mail addresses and/or accounts described above, including log files, dates, times, methods of connecting, ports, dial-ups, and/or locations;

4. All business records and subscriber information, in any form kept, pertaining to the electronic mail addresses and/or accounts described above, including applications, subscribers' full names, all screen names associated with the subscribers and/or accounts, all account names associated with the subscribers, methods of payment, telephone numbers, addresses, and detailed billing records, and all subscriber records for any Google account associated by cookies, recovery email address, or telephone number to the accounts described above.

5. All search history records stored and presently contained in, or on behalf of the account described above including, if applicable, web and application activity history (including search terms), device information history, and location history.

6. All location information stored in the Google account; and

7. All records indicating the services available to subscribers of the electronic mail addresses and/or accounts described above.

B. Law enforcement personnel will thereafter review all information and records received from Google, Inc., to determine the information to be seized by law enforcement personnel. The information to be seized consists of all information relating to attempts to provide material support to a designated terrorist organization, in violation of 18 U.S.C. § 2339B, and/or the possession of child pornography, in violation of 18 U.S.C. § 2252, including records relating to the identities of those who created, used, or communicated with the accounts.